STATE OF MINNESOTA

IN SUPREME COURT

A24-0037

Court of Appeals
Procaccini, J.
Took no part, Hennesy, J.

State of Minnesota,

Respondent,

vs.
Filed: July 29, 2026
Office of Appellate Courts

Mohamed Abdulgani Ahmed,

Appellant.

_____

Keith Ellison, Attorney General, Saint Paul, Minnesota; and

Greg Widseth, Polk County Attorney, Scott A. Buhler, First Assistant Polk County Attorney, Crookston, Minnesota, for respondent.

Cathryn Middlebrook, Chief Appellate Public Defender, Richard Schmitz, Assistant State Public Defender, Saint Paul, Minnesota, for appellant.

_____

S Y L L A B U S

Under Minnesota Statutes section 152.096, subdivision 1, and this court's decision in *State v. Kuhnau*, 622 N.W.2d 552 (Minn. 2001), the State's assertion that it need not prove that the defendant knew that a conspiracy to commit first-degree sale of controlled substances involved controlled substances at or above the relevant statutory weight threshold was plain error that requires a new trial.

Reversed in part, vacated in part, and remanded.

1

O P I N I O N

PROCACCINI, Justice.

This case relates to a prosecution under Minnesota's controlled substance conspiracy statute, Minnesota Statutes section 152.096, subdivision 1, and for other controlled substance offenses, in connection with fentanyl sales in an East Grand Forks apartment. Appellant Mohamed Abdulgani Ahmed appealed his convictions for conspiracy to commit first-degree sale of controlled substances, first-degree sale of controlled substances, and second-degree possession of controlled substances. The court of appeals affirmed the controlled substance conspiracy and sale convictions, but reversed and remanded for the district court to vacate the conviction for second-degree possession as a lesser-included offense.

We granted review to decide whether the prosecutor plainly erred by misstating the law to the jury in the State's closing argument. In particular, we review the prosecutor's statement that the State did not need to prove that Ahmed knew that he was in a conspiracy that "involved more than fifty grams" to prove Ahmed guilty of conspiracy to commit first-degree sale of controlled substances. Because we conclude that this statement was plain error that requires reversal, we remand for a new trial on the controlled substance conspiracy charge. And because the erroneous statement affected

Ahmed's substantial rights as to the first-degree sale and second-degree possession convictions, we remand for a new trial on those charges as well.[1]

## FACTS

In 2022, police officers received information about alleged fentanyl sales occurring at an apartment in East Grand Forks. Based on that information, officers surveilled the apartment. They observed and spoke to people coming and going from the apartment, and at least one of these people admitted to purchasing fentanyl from the apartment.

The officers obtained a search warrant and went to the apartment. When the officers knocked, Ahmed answered the door. The officers handcuffed Ahmed and searched the apartment. In the bedroom, officers found Ahmed's roommate, A.F., asleep on a mattress. Inside the bedroom closet, officers found a sandwich-sized Ziploc bag containing 775 pills, a plastic bag containing at least $2,000 in cash, and Ahmed's wallet. Later forensic analysis suggested that the pills in the bag contained fentanyl and weighed approximately 77.5 grams.

The officers arrested Ahmed and took him to the police station. They seized nine pills that Ahmed had in his pocket at the time of his arrest, as well as his cell phone. Ahmed admitted to the officers that he had sold fentanyl to the person whom the officers

---

[1]  Because our resolution of this issue warrants a new trial as to all the convictions that Ahmed has challenged before our court, we need not reach the other two issues for which we granted review.

3

had spoken with, as well as to a few other people. But he denied knowing about the bag of 775 pills, repeatedly saying "that's all him"—referring to A.F.

Police officers obtained a report of text messages extracted from Ahmed's cell phone. Those messages showed Ahmed's involvement in the sale of fentanyl pills. He had sent messages to A.F. about selling fentanyl pills, including price and quantity, and he had sent messages to other people about purchasing pills from him and A.F. In one text conversation, Ahmed noted that he usually sells the pills for "50 a pop," but charges "30" to people who bring in "sales and customers." The messages suggested that Ahmed agreed to sell a few fentanyl pills on multiple occasions.

The State charged Ahmed with conspiracy to commit first-degree sale of controlled substances (a first-degree controlled substance conspiracy)[2] in violation of Minnesota Statutes sections 152.096, subdivision 1 (2020), and 152.021, subdivision 1(4) (2020); first-degree sale of controlled substances in violation of Minnesota Statutes section 152.021, subdivision 1(4) (2020); and second-degree possession of controlled

---

[2] Under Minnesota Statutes section 152.096, subdivision 1, it is a crime to conspire to commit "any act prohibited by this chapter, except possession or distribution for no remuneration of a small amount of marijuana as defined in section 152.01." Minn. Stat. § 152.096, subd. 1. If a person conspires to commit a controlled substance crime as defined under chapter 152, that person is "guilty of a felony" and may be "imprisoned, fined, or both, up to the maximum amount authorized by law for the act the person conspired to commit." *Id.* Chapter 152 sets forth controlled substance offenses organized by degrees. *See, e.g.*, Minn. Stat. §§ 152.021 (first-degree controlled substance crimes); 152.022 (second-degree controlled substance crimes). For simplicity, we refer to the criminal offense described in Minnesota Statutes section 152.096 generally as a "controlled substance conspiracy," and a conspiracy to commit a controlled substance crime in the first degree under sections 152.096 and 152.021 as a "first-degree controlled substance conspiracy."

substances in violation of Minnesota Statutes section 152.022, subdivision 2(a)(4) (2020).[3] At the time, to commit a first-degree sale of controlled substances by selling fentanyl, a defendant needed to have sold at least 50 grams of a mixture or mixtures containing fentanyl. Minn. Stat. § 152.021, subd. 1(4).[4]

The case proceeded to a jury trial. The State argued that if Ahmed participated in a conspiracy to sell controlled substances under Minnesota Statutes section 152.096, then the jury could also find him guilty of first-degree sale and second-degree possession of controlled substances. Ahmed did not dispute that he sold fentanyl but instead argued that he did not know about the bag of pills or otherwise know that A.F. possessed or planned to sell such a large amount.

The dispositive issue in this appeal involves the State's closing argument to the jury. During that argument, the State addressed the first-degree controlled substance conspiracy charge, stating:

> But I don't need to prove that the defendant knew this conspiracy involved more than fifty grams, just that there was a conspiracy to do so, and

---

[3]     Ahmed was also charged with failure to affix a tax stamp in violation of Minnesota Statutes section 297D.09, subdivision 1a (2020) (repealed 2025), and the jury found him guilty of that charge. The district court entered a conviction and imposed a sentence. That conviction is not at issue in this appeal.

[4]     Ahmed was charged with "unlawfully sell[ing] one or more mixtures of a total weight of 50 grams or more containing a narcotic drug other than cocaine, heroin, or methamphetamine" under section 152.021, subdivision 1(4) (2020). In 2023, the Legislature amended section 152.021 to provide that selling 10 grams or more of a mixture or mixtures containing fentanyl is a first-degree controlled substance crime. *See* Act of May 19, 2023, ch. 52, § 8, 2023 Minn. Laws 810, 1047–48 (codified as amended at Minn. Stat. § 152.021, subd. 1(3)). We cite to the 2020 version of Minnesota Statutes sections 152.021, 152.022, 152.096, and 297D.09 throughout this opinion.

ultimately this conspiracy involved more than fifty grams. If you look at the Court's jury instructions, it doesn't say that I have to prove that he knew that this conspiracy involved more than fifty grams of fentanyl.

Ahmed did not object to this statement. The jury found Ahmed guilty on all counts.[5] Relevant to this appeal, the district court entered convictions for the first-degree controlled substance conspiracy, first-degree controlled substance sale, and second-degree controlled substance possession counts, but it imposed sentences for the first-degree controlled substance conspiracy and first-degree controlled substance sale counts.

Ahmed appealed the convictions for first-degree controlled substance conspiracy, first-degree controlled substance sale, and second-degree controlled substance possession. The court of appeals generally affirmed the district court, but it reversed and remanded for the district court to vacate the second-degree possession conviction because the entry of that conviction—for a lesser-included offense of first-degree controlled substance sale—violated Minnesota Statutes section 609.04, subdivision 1. *State v. Ahmed*, No. A24-0037, 2024 WL 5036670, at *1 (Minn. App. Dec. 9, 2024). Ahmed filed

---

[5]    The jury found Ahmed guilty of first-degree controlled substance conspiracy, first-degree controlled substance sale, second-degree controlled substance possession, and failure to affix a tax stamp (the charges set out in the complaint), as well as the lesser-included offenses of third-degree sale of controlled substances under Minnesota Statutes section 152.023, subdivision 1 (2020), and fifth-degree possession of controlled substances under Minnesota Statutes section 152.025, subdivision 2 (2020). Ahmed has not challenged—and we do not address—the verdicts on the tax stamp offense and the lesser-included offenses of third-degree sale of controlled substances and fifth-degree possession of controlled substances.

a petition for further review raising five issues, and we granted review of three of those issues.

## ANALYSIS

Ahmed challenges the prosecutor's statement in closing argument that the jury could find Ahmed guilty of first-degree controlled substance conspiracy without proof that Ahmed "knew this conspiracy involved more than fifty grams." Because Ahmed did not object to this statement at trial, we apply our modified plain error test. *See State v. Thompson*, 3 N.W.3d 257, 263 (Minn. 2024). This test allows for reversal in some circumstances, despite a defendant's failure to object. *Id.* (explaining that the modified plain error test "provides a limited exception to the harsh consequences of the common law forfeiture rule"). Under the modified plain error test, the defendant bears the initial burden to demonstrate that the statement at issue was an error and the error was plain. *State v. Portillo*, 998 N.W.2d 242, 248 (Minn. 2023). If the defendant meets their burden, "the burden then shifts to the State to demonstrate that the error did not affect the defendant's substantial rights." *Id.* (citation omitted) (internal quotation marks omitted). If the State fails to carry its burden, we then assess whether reversal is required to ensure the fairness and integrity of the proceedings. *Id.* We address each step of the modified plain error test below.

### A.

We first determine whether the State erred when it asserted that the jury could find Ahmed guilty of first-degree controlled substance conspiracy without finding that Ahmed

7

"knew this conspiracy involved more than fifty grams." "Prosecutors err when they misstate the law in closing argument." *State v. Segura*, 2 N.W.3d 142, 161 (Minn. 2024).

Because the statement could have been based on two sources of law, we consider each source of law in turn. We first examine whether section 152.096, subdivision 1—the controlled substance conspiracy statute—supports the statement under a theory that Ahmed personally committed a first-degree controlled substance conspiracy. We then examine whether section 609.05—a statute that makes conspirators liable for the crimes of their co-conspirators under certain circumstances—supports the statement.

1.

We begin by considering Ahmed's liability under the theory that he personally conspired to commit a first-degree controlled substance crime under Minnesota Statutes section 152.096, subdivision 1. This statute provides that a person who "conspires to commit any act prohibited by [chapter 152], except possession or distribution for no remuneration of a small amount of marijuana as defined in section 152.01 … is guilty of a felony." Minn. Stat. § 152.096, subd. 1.

As we explained in *State v. Kuhnau*, to prove controlled substance conspiracy, the State must show (1) an agreement between two or more people to commit a crime; (2) an overt act in furtherance of the conspiracy; and (3) a conscious and intentional purpose to break the law. 622 N.W.2d 552, 556 (Minn. 2001). The third element requires "both knowledge of an agreement and evidence of intent to commit the crime or act that is the object of the conspiracy." *Id.* Accordingly, for a jury to find a defendant guilty of conspiracy to commit first-degree controlled substance sale, it must find "evidence of

8

intent to commit" a first-degree controlled substance sale. *See Kuhnau*, 622 N.W.2d at 556 (citing *State v. Burns*, 9 N.W.2d 518, 521 (Minn. 1943)); *see also Burns*, 9 N.W.2d at 520 (explaining that a conspiracy to cheat and defraud requires "a common object to cheat and defraud, which each member of the combination intends shall be accomplished by the concerted action of all"); 2 Wayne R. LaFave, *Substantive Criminal Law* § 12.2(c)(2) (3d ed. 2018) ("[T]he mental state required [for conspiracy] is an intent to achieve a particular result which is criminal." (footnotes omitted)).

Here, the object of the alleged controlled substance conspiracy was first-degree sale, and our reasoning in *State v. Kuhnau* controls our assessment of the State's assertion. Our analysis in *Kuhnau* was rooted in the critical requirement that the State prove every element of a crime beyond a reasonable doubt. *See Kuhnau*, 622 N.W.2d at 558 ("The conspiracy instruction's omission of an element of the offense of sale in the first degree did not fairly and adequately explain the law of the case and was error."); *see also State v. Robinson*, 517 N.W.2d 336, 339 (Minn. 1994) (explaining that every element of an offense "must be proven by the state and proven beyond a reasonable doubt").[6]

The defendant in *Kuhnau* was charged with controlled substance conspiracy under section 152.096, subdivision 1, for conspiring to sell 50 grams or more of a mixture containing methamphetamine. *Kuhnau*, 622 N.W.2d at 553. When instructing the jury on the controlled substance conspiracy charge, the district court in *Kuhnau* failed to explain

---

[6]    As we have recently emphasized, "the Due Process Clause requires the State to prove every element of a charged offense beyond a reasonable doubt in order to secure a conviction." *State v. Paulson*, 22 N.W.3d 144, 150 (Minn. 2025).

9

that one of the elements of first-degree sale of methamphetamine was that the defendant "knew or believed that the substance sold was methamphetamine[.]" *Id.* at 557. This was problematic because the defendant's defense to the first-degree controlled substance conspiracy charge was that he did not know that the conspiracy was to sell genuine methamphetamine; the defendant asserted that he believed that he and his co-conspirators were selling fake methamphetamine. *Id.* at 554.

In *Kuhnau*, we held that the district court abused its discretion because its instruction did not require the jury to find evidence of intent to commit all the elements of the substantive crime that was the object of the controlled substance conspiracy. *Id.* at 557–58. Specifically, the jury was not asked to find whether the defendant knew that the plan was to sell genuine methamphetamine. *Id.* at 558.

Applying *Kuhnau*'s holding to this case means that the jury needed to find that Ahmed intended the commission of every element of the underlying first-degree controlled substance offense, including the sale of at least 50 grams of a mixture or mixtures containing fentanyl. Ahmed was charged with first-degree controlled substance conspiracy for allegedly conspiring to sell fentanyl in the first degree. At the time of Ahmed's alleged conduct, the elements of first-degree controlled substance sale under Minnesota Statutes section 152.021, subdivision 1(4), were the following: (1) the defendant; (2) on one or more occasions within a 90-day period; (3) unlawfully sold one or more mixtures weighing at least 50 grams and containing a narcotic other than cocaine, heroin, or methamphetamine; (4) which the defendant knew or believed contained a narcotic. *See* Minn. Stat. § 152.021, subd. 1(4); *Kuhnau*, 622 N.W.2d at 557.

10

Accordingly, under *Kuhnau*, for the jury to find Ahmed guilty of conspiracy to commit first-degree sale of controlled substances, it first had to find that Ahmed and a co-conspirator agreed to (1) an unlawful sale or sales; (2) on one or more occasions within a 90-day period; (3) of one or more mixtures weighing at least 50 grams and containing fentanyl; (4) which Ahmed knew or believed contained fentanyl.[7] *See Kuhnau*, 622 N.W.2d at 556–57. In short, for the jury to return a guilty verdict under *Kuhnau*, it needed to find—among other things—that Ahmed intended a sale of a mixture (or sales of mixtures) weighing at least 50 grams and containing fentanyl.[8]

---

[7]    The jury also had to find that Ahmed took an overt act in furtherance of the conspiracy. *See Kuhnau*, 622 N.W.2d at 556.

[8]    Other state courts take a similar approach to controlled substance conspiracy. In Michigan, because the required intent includes the intent to accomplish "the illegal objective," the State must prove that a defendant intended to deliver the statutory minimum of controlled substances for the defendant to be found guilty of a controlled substance conspiracy. *People v. Mass*, 628 N.W.2d 540, 549, 551–52 (Mich. 2001). *See also People v. Polk*, 254 N.E.3d 326, 387 (Ill. App. Ct. 2024) (concluding that a jury must find whether a defendant in an alleged drug conspiracy intended to possess an amount of drugs at or above the statutory threshold); *Valera-Rodriguez v. State*, 294 So. 3d 990, 993 (Fla. Dist. Ct. App. 2020) (holding that to prove conspiracy to traffic cocaine, the State must prove an agreement to sell cocaine in the "proscribed quantity").

When addressing conspiracy charges more generally, other states require proof that the defendant intended to commit each element of the underlying offense. In New Hampshire, to find a defendant guilty of criminal conspiracy, the jury must find agreement "to bring about each element of the underlying offense." *State v. Rodriguez*, 64 A.3d 962, 971–72 (N.H. 2013). Likewise, in Connecticut, to prove that a defendant committed a conspiracy, the State must prove "the intent to commit the offense which is the object of the conspiracy," which includes every element of the substantive crime. *State v. Pond*, 108 A.3d 1083, 1093–94 (Conn. 2015). And in North Carolina, to find a defendant liable for conspiracy, "the State must prove an agreement to perform every element of the crime." *State v. Suggs*, 453 S.E.2d 211, 215 (N.C. 1995). The Model Penal Code similarly requires intent to commit the underlying offense to be guilty of conspiracy to commit that offense. *See Model Penal Code* § 5.03 (note on definition of conspiracy).

The State urges us to adopt the federal approach to controlled substance conspiracy, which does not require the government to prove that a defendant agreed to sell a particular amount. But federal law is unpersuasive here, because the federal statutes are meaningfully different from the Minnesota statutes. The federal statutes include a conspiracy crime specific to controlled substances. *See* 21 U.S.C. § 846 (establishing that "[a]ny person who attempts or conspires to commit any [controlled substance] offense defined in this subchapter" has committed a crime). To convict a defendant of that crime, the government must prove that the defendant agreed that the conspiracy would result in the commission of an underlying controlled substance offense set forth in 21 United States Code section 841(a). *United States v. Collazo*, 984 F.3d 1308, 1320 (9th Cir. 2021). Section 841(a), however, does not include weight thresholds as an element of any offense. *See* 21 U.S.C. § 841(a). Weight thresholds are mentioned separately, in the portion of the statute that establishes penalties for controlled substance crimes. *See* 21 U.S.C. § 841(b). Accordingly, to conspire to commit the underlying federal offense, a defendant need not agree to a particular weight, because weight is not an element of any of the underlying controlled substance offenses. *Collazo*, 984 F.3d at 1329, 1333.

As discussed above, under Minnesota law, the weight threshold *is* an element of first-degree sale of a controlled substance. *See Robinson*, 517 N.W.2d at 339 (noting that "[t]he weight of the mixture is an essential element" of the charged controlled substance sale crime). Relevant here, to prove first-degree controlled substance sale, the State was required to prove that "on one or more occasions within a 90-day period the person unlawfully sells one or more mixtures of a *total weight of 50 grams or more* containing a

12

narcotic drug other than cocaine, heroin, or methamphetamine." Minn. Stat. § 152.021, subd. 1(4) (emphasis added). In other words, under Minnesota law, intent to commit first-degree controlled substance sale—as required to prove conspiracy to commit that offense—must include an intent to sell a quantity of a mixture or mixtures containing controlled substances that meets or exceeds the statutory weight threshold. For these reasons, the State's suggestion that the jury did not need to find that Ahmed "knew this conspiracy involved more than fifty grams" lacks support in the controlled substance conspiracy statute.[9]

2.

To the extent that the State argues that the expansive liability provision in Minnesota Statutes section 609.05, subdivision 2, supports the State's assertion, we consider but reject the argument.[10]

---

[9]    To hold otherwise would lead to an odd and problematic result, as it would render the elements of proof for conspiracy to commit third-degree sale of a controlled substance identical to those of conspiracy to commit first-degree sale of a controlled substance. Consider the sale of narcotics under Minnesota Statutes section 152.021, subdivision 1(4), as an example: A first-degree narcotics sale is a sale of 50 grams or more of a mixture or mixtures containing the narcotic. But under Minnesota Statutes section 152.023, subdivision 1(1), a third-degree narcotics sale is a sale of any amount. If conspiracy to sell narcotics in the first degree under section 152.096 did not require proof of intent to sell an amount at or above the weight threshold, then a defendant could agree to sell *any* amount of narcotics, and the State could rely on that agreement to prove both conspiracy to commit first-degree controlled substance sale and conspiracy to commit third-degree controlled substance sale—different crimes carrying different punishments. *Compare* Minn. Stat. § 152.021, subd. 3(a) (30-year maximum imprisonment), *with* Minn. Stat. § 152.023, subd. 3(a) (20-year maximum imprisonment).

[10]    Although the parties did not fully brief this issue, the district court provided the jury with an instruction that closely tracks the language of section 609.05, subdivision 2. We address this issue in the interest of completeness. *See Moorhead Econ. Dev. Auth. v.*

13

A defendant is generally liable only for criminal acts that they personally commit. *State v. Ezeka*, 946 N.W.2d 393, 407 (Minn. 2020). But Minnesota's accomplice liability provision, Minnesota Statutes section 609.05, subdivision 1, provides that a defendant may be criminally liable for a crime committed by another person if the defendant "intentionally aids, advises, hires, counsels, or conspires with or otherwise procures the other to commit the crime." And section 609.05, subdivision 2—the expansive liability provision—provides that once a defendant is liable for a crime of another person under subdivision 1, they may also be liable for additional crimes: "A person liable under subdivision 1 is also liable for any other crime committed in pursuance of the intended crime if reasonably foreseeable by the person as a probable consequence of committing or attempting to commit the crime intended." Minn. Stat. § 609.05, subd. 2. Embedded within this provision is a clear limit; the "other crime" must be "reasonably foreseeable by the person as a probable consequence of committing or attempting to commit the crime intended." *Id.* The "reasonably foreseeable" standard is objective, but it is "based only on what would be reasonably foreseeable to a person in the defendant's shoes." *State*

*Anda*, 789 N.W.2d 860, 875 (Minn. 2010) (describing our authority to take action as the interests of justice may require, even if the issue is not fully articulated by the parties, to decide cases in accordance with the law).

We further note that the relationship between section 609.05 and the substantive crime of conspiracy is somewhat murky. When previously confronted with the question of whether one can aid and abet a criminal conspiracy under section 609.05, we declined to answer. *See State v. Brown*, 732 N.W.2d 625, 628 (Minn. 2007) ("We need not, and do not, decide whether aiding and abetting a conspiracy is a viable charge in Minnesota because even if it were a viable charge, the state failed to present sufficient evidence to support Brown's conviction."). The State has expressly disclaimed that it is pursuing a theory that Ahmed conspired to conspire in this case, so we need not address the viability of such a theory here.

14

*v. McAllister*, 862 N.W.2d 49, 56 (Minn. 2015). In *State v. Atkins*, we explained that reasonable foreseeability presents a question of fact for the jury, and the jury may make reasonable inferences based on experience and common sense when answering the question. 543 N.W.2d 642, 646 (Minn. 1996).

Here, the State told the jury that it did not "need to prove that the defendant knew this conspiracy involved more than fifty grams, *just that there was a conspiracy to do so, and ultimately this conspiracy involved more than fifty grams*." Even if the State's theory were that Ahmed could have been found guilty of first-degree controlled substance conspiracy because he conspired to commit some other controlled substance crime, the jury could not have found him guilty by finding only that "there was a conspiracy" and the conspiracy "involved more than fifty grams." Instead, the jury would have also needed to find that it would have been *reasonably foreseeable* to someone in Ahmed's position that a first-degree controlled substance conspiracy was a probable consequence of whatever other controlled substance crime Ahmed conspired to commit. This reasonable foreseeability requirement must be considered by the jury and proven by the State.[11] *See Atkins*, 543 N.W.2d at 646 (explaining that whether the crime was reasonably foreseeable is a "question of fact for the jury"). Here, nothing in the record shows that the jury considered, or that the State proved, that first-degree controlled substance conspiracy

---

[11] Although the State discussed reasonable foreseeability elsewhere in its closing argument and in relation to other charges, the State did not argue that a first-degree controlled substance conspiracy was reasonably foreseeable as a probable consequence of any other crimes alleged in this case. As a result, we need not address whether the State could have cured the error here by discussing the reasonable foreseeability of a first-degree controlled substance conspiracy.

15

was reasonably foreseeable. For these reasons, the expansive liability provision also does not provide support for the State's assertion.

Because neither the controlled substance conspiracy statute nor the expansive liability provision supports the assertion that the State need not "prove that the defendant knew this conspiracy involved more than fifty grams," that assertion was an error.

## B.

Having concluded that the State erred, we turn to whether the error was plain. An error is plain when it is "clear or obvious." *Portillo*, 998 N.W.2d at 250 (citation omitted) (internal quotation marks omitted). A prosecutor's closing argument constitutes plain error when it "contravenes case law, a rule, or a standard of conduct." *Id.* (citation omitted) (internal quotation marks omitted). As explained above, the prosecutor's statement here contravened *Kuhnau*, *Atkins*, and the plain language of section 609.05. It was therefore plainly erroneous.

The State nevertheless argues—and the court of appeals agreed—that the error was not plain because the State's assertion was consistent with a statement of the court of appeals in *State v. Aviles-Alvarez*, 561 N.W.2d 523, 526 (Minn. App. 1997). But *Aviles-Alvarez* is distinguishable. In *Aviles-Alvarez*, the court of appeals stated that "[a] defendant need not know the exact quantity of an illegal drug he sells to be guilty of the crime of conspiring to sell methamphetamine in the first degree." *Id*. The court of appeals, however, made that statement in the context of distinguishable facts and a different procedural posture. The facts are distinguishable because the defendant in *Aviles-Alvarez* conceded to having more knowledge than Ahmed did. The defendant in

16

*Aviles-Alvarez* admitted to possessing a bag that contained the statutory amount of controlled substances and did not dispute that the bag contained the statutory amount of that substance. *Id.* at 525. Ahmed, on the other hand, has never admitted possessing, or even knowing about, the bag of pills at issue in this case. And the procedural posture in *Aviles-Alvarez* was different because the court of appeals was evaluating the accuracy of the defendant's guilty plea—not a trial error—when the defendant admitted that he received more than 50 grams of methamphetamine. *Id.* at 525–26.

Even if *Aviles-Alvarez* were not distinguishable, *Kuhnau* overruled any holding that first-degree controlled substance conspiracy does not require proof of intent that the conspiracy would result in a controlled substance crime at or above the statutory weight threshold. If an opinion of the court of appeals is inconsistent with a subsequent opinion of this court, the opinion of this court controls. *See*, *e.g.*, *State v. Porte*, 832 N.W.2d 303, 312 n.1 (Minn. App. 2013); *State v. Foster*, 630 N.W.2d 1, 4 (Minn. App. 2001); *see also Young v. Hayes*, 218 F.3d 850, 853 (8th Cir. 2000). Because *Aviles-Alvarez* was decided four years before *Kuhnau*, any contrary holding in *Aviles-Alvarez* was abrogated when we issued *Kuhnau*. *Kuhnau* has been the controlling law in Minnesota since 2001, and so the error here was plain.

C.

Having concluded that the prosecutor's statement was plain error, we next examine whether the State has met its burden to show that the error did not affect Ahmed's substantial rights. *See Portillo*, 998 N.W.2d at 251. To meet that burden, the State must show that the error was not prejudicial. *Id.* at 253. To do so, the State must

17

convince us there is no reasonable likelihood that the absence of the error "would have had a significant effect on the verdict of the jury." *Id.* at 251 (citation omitted) (internal quotation marks omitted). When evaluating this question, we may consider, among other relevant things, "the strength of the evidence against the defendant, the pervasiveness of the improper suggestions, and whether the defendant had an opportunity to (or made efforts to) rebut the improper suggestions." *Segura*, 2 N.W.3d at 162 (citation omitted) (internal quotation marks omitted). We conclude that the State has not met its burden here.

Turning first to the strength of the evidence, there is no doubt that the evidence that Ahmed agreed to sell fentanyl is strong. But the evidence that Ahmed agreed to sell a mixture or mixtures containing fentanyl weighing *at least 50 grams* is more limited. When assessing the strength of the State's evidence, we have looked for "overwhelming," "considerable," and "ample" evidence of a defendant's guilt. *See*, *e.g.*, *State v. Huber*, 877 N.W.2d 519, 526–27 (Minn. 2016); *see also Portillo*, 998 N.W.2d at 253. Such evidence is generally of a "large quantum" and is not "entirely circumstantial." *See Portillo*, 998 at 252 n.7 & 253.

Here, evidence in the State's favor includes an extensive exhibit of text messages in which Ahmed discusses selling fentanyl with A.F. These discussions touch on price and quantity, as well as whether any of Ahmed's existing customers should receive a deal for bringing in new customers. Some of these messages imply that Ahmed and A.F. sold fentanyl to at least one regular customer. The State also presented evidence that the bag of fentanyl pills, Ahmed's wallet, and a bag of cash were all found in a closet in the

18

apartment where Ahmed was arrested. On the other hand, Ahmed correctly noted at trial that none of the text messages suggest that he sold an amount above the statutory threshold, which here would have amounted to approximately 500 of the pills found in the apartment. Instead, the text messages suggest that Ahmed sold only a pill or two at a time. We therefore conclude that the State's evidence that Ahmed agreed to sell at least 50 grams of a mixture or mixtures containing fentanyl is not "overwhelming," "considerable," or "ample." This weighs against a showing that there is no reasonable likelihood that the absence of the error would have had a significant effect on the jury's verdict.

We turn next to the pervasiveness of the State's improper suggestion. When analyzing pervasiveness, we often examine the frequency of the improper statement. *Contrast State v. Davis*, 735 N.W.2d 674, 682 (Minn. 2007) (concluding that statements were not pervasive when they were limited to one page of a 64-page transcript of the defendant's testimony), *with State v. Mayhorn*, 720 N.W.2d 776, 791 (Minn. 2006) (concluding that statements were pervasive when the prosecutor repeated them on at least 20 pages of an 80-page cross-examination transcript). Here, the statement occurred only once at closing, so it was not pervasive by this measure.

But a statement that does not recur may still be prejudicial. In *Portillo*, the State misstated the law in its closing argument by telling the jury that the defendant "no longer has [the] presumption of innocence" and that the defendant had "been proven guilty beyond a reasonable doubt." *Portillo*, 998 N.W.2d at 246–47. The State made similar statements two more times before the jury deliberated. *Id.* at 253–54. Because this

19

misstatement occurred only three times and on only one page of the 20-page closing argument transcript, we noted that it "may not" have been pervasive. *Id.* Nevertheless, we concluded that the misstatement was prejudicial because there was no remedy for the harm. *Id.* at 254. Although the State suggested that the jury instructions were sufficient to correct the harm, these instructions did not "contradict or otherwise instruct the jury to ignore the prosecutor's misstatement … *before deliberations*." *Id.*

The State's assertion here was similarly prejudicial. Although the State made only one misstatement about the weight threshold, this misstatement was central to the State's overall theory of the case, which was that Ahmed and A.F. were working to sell fentanyl out of the apartment and that Ahmed was guilty of any sale or possession of fentanyl done in furtherance of that operation. When the State introduced the first-degree controlled substance conspiracy charge in its closing argument, it explained: "[O]ne reason I start with that count is because if you find the defendant guilty beyond a reasonable doubt of this offense, it's pretty easy to find him guilty of the remainder of the offenses." The State then supported its argument by directing the jurors' attention to the jury instructions, stating: "If you look at the Court's jury instructions, it doesn't say that I have to prove that he knew that this conspiracy involved more than fifty grams." Here, not only did the jury instructions fail to correct the harm, but the State also used the jury instructions to *emphasize* its erroneous view of the law, lending authority to its argument that the jury could disregard an element of first-degree controlled substance conspiracy.

The effect of the misstatement likely reached beyond the jury's deliberation on the first-degree controlled substance conspiracy charge, influencing the jury's understanding

20

of the first-degree controlled substance sale and second-degree controlled substance possession charges as well. The thrust of the State's closing argument was to portray a finding of first-degree controlled substance conspiracy as having fewer elements than necessary, and then to ask the jury to rely on that finding to further find Ahmed guilty of possession and sale. For these reasons, although the statement may not have been pervasive, it was nonetheless prejudicial.

We recognize that Ahmed had the opportunity to rebut the State's improper suggestion, and this factor disfavors Ahmed. Although we are more likely to find that this factor favors the defendant when an error occurs during closing—as it did here—Ahmed nevertheless had an opportunity to address the error in his own closing argument. *See Portillo*, 998 N.W.2d at 253–54 (noting that the fact that the State made an erroneous statement during the State's *rebuttal* argument was important because the statement was part of the final argument heard by the jury); *see also State v. Buggs*, 581 N.W.2d 329, 340–41 (Minn. 1998) (holding that the State's remarks during cross-examination were not prejudicial error because the defense had the opportunity to address the remarks on redirect and in closing argument), *overruled on other grounds by State v. McCoy*, 682 N.W.2d 153 (Minn. 2004).

Our "overarching concern" in cases involving prosecutorial error is whether the error "may [have denied] the defendant's right to a fair trial." *State v. Ramey*, 721 N.W.2d 294, 300 (Minn. 2006). Prosecutorial error may deprive a defendant of a fair trial even in a case in which the evidence of guilt is strong or when the misstatement is made only a couple of times. *Portillo*, 998 N.W.2d at 253–54. And even where there is sufficient

21

admissible evidence on which to base a guilty verdict, if prosecutorial plain error deprives the defendant of a fair trial, the error will still affect the defendant's substantial rights. *See id.* at 253. This can happen when it is unclear whether the defendant was found guilty because of the relevant evidence, or because of the error. *See State v. Harris*, 521 N.W.2d 348, 354–55 (Minn. 1994) (noting that the State had a strong case, but prosecutorial error nonetheless affected a defendant's right to a fair trial because "it [was] not clear to us whether the jury found Harris guilty because of the relevant evidence and reasonable inferences therefrom, or because of inadmissible evidence and innuendo").

Here, the basis for the jury's verdict is unclear. The jury may have found Ahmed guilty based on an inference that he agreed to sell 50 grams or conspired to commit a crime in which the sale of 50 grams was reasonably foreseeable. But it also may have believed that Ahmed did *not* agree to sell 50 grams and that such a sale was *not* reasonably foreseeable, but nevertheless found him guilty based on the State's erroneous direction to disregard an element of first-degree controlled substance conspiracy.[12]

---

[12] We have similarly concluded that omitting an element of a crime from the jury instructions may prejudicially affect a defendant's substantial rights. In addressing the substantial rights prong of the plain error test in *State v. Watkins*, we said that "[t]he reviewing court may consider, among other factors, whether: (1) the defendant contested the omitted element and submitted evidence to support a contrary finding, (2) the State submitted overwhelming evidence to prove that element, and (3) the jury's verdict nonetheless encompassed a finding on that element." 840 N.W.2d 21, 29 (Minn. 2013). We note that Ahmed contested the element that the State instructed the jury to disregard and submitted evidence to support a favorable finding on that element, the State did not submit overwhelming evidence to prove that element, and the jury's verdict did not encompass a finding on that element.

22

In sum, the State's evidence that Ahmed agreed to sell at least 50 grams of a mixture or mixtures containing fentanyl is not strong, we cannot determine from the record whether the jury properly found Ahmed guilty of any of the three charges at issue, and the State's misstatement of the law was prejudicial. Although Ahmed had an opportunity to rebut the State's misstatement in his own closing argument, we conclude that the State has not satisfied its burden to show that there is no reasonable likelihood that the absence of the error would have had a significant effect on the jury's verdict. We therefore conclude that the error affected Ahmed's substantial rights.

D.

Finally, we assess whether reversal is necessary "to ensure the fairness, integrity, or public reputation of the judicial proceedings." *State v. Bustos*, 861 N.W.2d 655, 663 (Minn. 2015). The State's closing argument instructed the jury that it could disregard an element of first-degree controlled substance conspiracy. In *State v. Watkins*, we concluded that the omission of an element of a crime from the jury instructions was plain error that required reversal when such an omission prevented the jury from considering the defendant's primary defense. 840 N.W.2d 21, 30–31 (Minn. 2013). The logic set forth in *Watkins* is all the more compelling here, where the error at issue involved more than an omission. The State's *affirmative* statement in this case may well have prevented the jury from considering Ahmed's primary defense—his assertion that he did not know the extent of the fentanyl dealing. As in *Watkins*, allowing a jury to consider Ahmed's defense in a new trial "will protect the fairness, integrity, and public reputation of judicial proceedings." *See id.* at 31.

We therefore reverse Ahmed's conviction for conspiracy to sell controlled substances in the first degree. And because the State leveraged its affirmative misstatement of the law by applying it to the first-degree sale and second-degree possession counts, we conclude that Ahmed is entitled to appellate relief on those counts as well. Although the court of appeals remanded for the district court to vacate Ahmed's second-degree possession *conviction*, because a jury's underlying *verdict* on a vacated conviction remains in force, *State v. Hallmark*, 927 N.W.2d 281, 300 (Minn. 2019), we vacate that portion of the court of appeals' opinion. Accordingly, we reverse in part and vacate in part the decision of the court of appeals and remand for a new trial on the charges of conspiracy to commit first-degree sale of controlled substances, first-degree sale of controlled substances, and second-degree possession of controlled substances.[13]

---

[13] Given this disposition, we need not reach the merits of the remaining issues in Ahmed's appeal—whether the district court erred in issuing its instruction on co-conspirator liability and whether the State erred when it told the jury that it could find Ahmed guilty of first-degree controlled substance sale if four jurors believed Ahmed sold fentanyl himself, four believed he conspired to sell fentanyl, and four believed he aided and abetted the sale of fentanyl. On retrial, however, should these issues be revisited, we strongly urge that (1) the distinction between the substantive crime of conspiracy and the accomplice liability theory of criminal liability, as explained in *State v. Ezeka*, 946 N.W.2d 393, 407–08 (Minn. 2020), *Dobbins v. State*, 788 N.W.2d 719, 729–30 (Minn. 2010), and *State v. Bellecourt*, 152 N.W.2d 61, 63 (Minn. 1967), be made clear to the jury; and (2) the issue of juror unanimity be considered in light of our recent decision in *State v. Keyes*, ___ N.W.3d ___, No. A23-1400, 2026 WL 2053029 (Minn. July 15, 2026).

**CONCLUSION**

For the foregoing reasons, we reverse in part and vacate in part the decision of the court of appeals and remand for further proceedings consistent with this opinion.

Reversed in part, vacated in part, and remanded.


HENNESY, J., took no part in the consideration or decision of this case.